UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division

IN RE:

FIRST BAPTIST CHURCH DEVELOPMENT
CORPORATION,   CASE NO. 13-15674-EPK
   CHAPTER 11
   Debtor.
_____/

## DISCLOSURE STATEMENT

The Debtor, First Baptist Church Development Corporation, submits this Disclosure Statement to its creditors and other parties in interest. The approval of the Disclosure Statement is not tantamount to a decision by the Court on the merits of the Plan.

## I. INTRODUCTION

A. Purpose of this Document.

This Disclosure Statement is submitted pursuant to the requirement imposed on the proponent of a Plan of Reorganization by 11 U.S.C. § 1125. The purpose is to disclose information deemed to be material, important, and necessary for the creditors to arrive at a reasonably informed decision in exercising their right, or to vote for acceptance or rejection of the Plan of Reorganization. This Disclosure Statement should be read in conjunction with the accompanying Plan of Reorganization. The Plan is a legally binding document once it is approved by the Court, and should be read in its entirety. Accordingly, creditors may wish to consult with their own attorney to more fully understand the Plan.

No representations concerning the Debtor, its future business operations, the value of its property or the value of any benefits offered to holders of claims or interests in connection with the Plan are authorized other than as set forth in this Disclosure Statement. Any representations or inducements made to secure acceptance of the Plan other than those contained in this Disclosure Statement should not be relied upon by a creditor or interest holder. Any such additional

representations and inducements should be reported to counsel for the Debtor at the address below and to the United States Trustee.

The information contained in this Disclosure Statement has not been subject to certified audit and is based in large extent on information maintained and collected by the Debtors. While every effort has been made to provide the most accurate information available, the books and records of the Debtors are not warranted or represented to be completely and historically accurate. Further, much of the information contained herein consists of projections of future performance. While every effort has been made to insure that the assumptions are valid and that the projections are as accurate as can be made under the circumstances, neither the Debtor nor its accountants undertake to certify or warrant the absolute accuracy of the projections.

B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

1. Time and Place of the Hearing to Confirm the Plan

The hearing at which the Court will determine whether to confirm the Plan will take place on _____, in Courtroom B, Room 801, at 1515 North Flagler Drive, West Palm Beach, FL 33401.

2. Deadline for Voting to Accept or Reject the Plan

If you are entitled to accept or reject the plan, vote on the enclosed ballot and return the ballot to the United States Bankruptcy Court, 1515 N. Flagler Drive, Room 801, West Palm Beach, FL 33401. See section VIII for a discussion of voting eligibility requirements.

The ballot must be received by _____ or it will not be counted.

3. Deadline for Objecting to the Confirmation of the Plan

Objections to the confirmation of the Plan must be filed with the Court and served upon the Debtor; attorney for the Debtor, Brian K. McMahon, P.A., 6801 Lake Worth Road, Suite 315, Lake

Worth, FL 33467; Heidi Feinman, Office of the U.S. Trustee, 51 S.W. First Ave, Suite 1204, Miami, FL 33130; and all interested parties by _____.

    4. Identity of Person to Contact for More Information

If you want additional information about the Plan, you should contact Brian K. McMahon, P.A., 6801 Lake Worth Road, Suite 315, Lake Worth, FL 33467.

    5. Effective Date. As the term is used in this disclosure statement and the plan of reorganization, the effect date shall be 10 days after the date the Order of Confirmation becomes final.

## II. BACKGROUND

The Debtor, First Baptist Church Development Corporation, is a Florida, non-profit/tax exempt, entity that owns two lots in Riviera Beach, FL. The first lot is improved with a church building and a school building. The second lot is unimproved and is vacant.

The Debtor generates income from two primary sources. Tithes and contributions from the congregation is one principal source. The second source of income is the rental income from schools that are operated in the school building.

The Debtor got to this point when it obtained a balloon mortgage. The Debtor was unable to obtain new financing prior to the termination date of the mortgage and was facing a foreclosure sale when the case was filed.

Immediately before the filing, the Debtor began increasing revenue when it opened the school building to be used to lease to other entities to provide classes to others. Presently, there are two schools using the building that generate approximately $5,000 a month in revenue for the Debtor. Tithes and contributions add another $5,000.00 per month of revenue.

## III. POST-PETITION EVENTS

The Debtor has negotiated a settlement with the mortgage holder to give the Debtor 9 months to obtain new financing. During that time, the Debtor will make adequate protection payments to the mortgage holder.

## IV. FINANCIAL INFORMATION

The Debtor has filed schedules of assets, liabilities, income and expenses, a Statement of Financial Affairs, and Monthly Operating Reports which contain the most accurate and current information available to the Debtor.

A. Real Property

The Debtor owns the property located at 135 W. 12th St, Riviera Beach, FL (the "Church Property") and a vacant lot adjacent to the Church Property. The Debtor believes that the combined value of these lots is $425,000.00.

B. Personal Property

The Debtor owns very little personal property. These items consist of office furniture, computers, printers, and musical instruments. The value of these items total approximately $9,300.00.

C. Ability to Fund and Complete Plan

The Church Property will generate sufficient rental income from tithes, contributions and rental income to make adequate protection payments to the lender and to substantiate obtaining a new loan.

## V. EXECUTORY CONTRACTS

The Debtor has leases with various tenants. The Debtor, upon confirmation of the plan, will be assuming all of those leases.

## VI. LIQUIDATION ANALYSIS

| | | |
|---|---|---|
| Estimated value of assets: | | $ 434,300.00 |
| Less liens on property | $ 284,000.00 | |
| Administrative Claims | $ 5,000.00 | |

Amount available for general unsecured creditors   $145,300.00

## VII. SPECIAL RISK FACTORS

Certain substantial risk factors are inherent in most plans of reorganization in Chapter 11 cases. If such plans are accepted, it is usually because they represent a greater return in dividends than in a liquidating Chapter 7 case. This Plan bears the risk that the Debtor continues to receive rental income and continues to receive income from the generosity of others, all of which may reduce the Debtor's ability to make payments under this Plan.

Should the Debtor's plan failed to be approved, or should the Debtor default under the plan, the lender will be entitled to complete its foreclosure process and sell the property at a foreclosure sale. The Debtor will then not receive the necessary income to make the plan payments. Additionally, there is a substantial risk that any equity the Debtor has in the Real Property will not be realized at a foreclosure sale, limiting any distribution to other creditors.

ALL THE RISK FACTORS INHERENT IN A PLAN OF REORGANIZATION UNDER CHAPTER 11 ARE PRESENT IN THIS CASE. CREDITORS ARE URGED TO CAREFULLY READ THIS DISLOSURE STATEMENT AND THE ACCOMPANYING PLAN OF REORGANIZATION SO THAT AN INFORMED JUDGMENT CAN BE MADE WITH RESPECT TO VOTING ON THE PLAN.

## VIII. SUMMARY OF NON-BANKRUPTCY LITIGATION

At the time of the filing of the case, the Debtor defendant was in the foreclosure action with the lender on the Church Property. The case is stayed and should be dismissed upon confirmation of the Plan.

## IX. SUMMARY OF PLAN OF REORGANIZATION

A. Purpose of the Plan of Reorganization

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

B. Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has not placed the following claims in any class:

1. Administrative Claims

Administrative expenses are costs or expenses or administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

Administrative claims:

| | | |
|---|---|---|
| Professional fees: | estimated $5,000.00 | Subject to Court authorization, to be paid in full on effective date or as agreed to by attorney and Debtors. |
| Office of the US Trustee | current | Paid in full on effective date |

2. Priority Claims

None

C. Classes of Claims and Equity Interests

The Plan shall provide for the payment of all expenses of this proceeding, including fees due the Office of the U.S. Trustee. The accompanying Plan of Reorganization divides creditors into the following classes:

Class 1 – The secured claims of the property tax certificate holder, CRI Tax Assets, LLC, for 2008 tax year property taxes, in the amount of $3,700.19, is secured but is impaired. This amount is secured by the property located at 135 W. 12th St, Riviera Beach, FL and will be paid in full upon the obtaining of post-petition financing. In the event that post-petition financing is not obtained, the Church Property will be deeded back to the lender and the creditor will retain its lien on the property. Until such time as the refinancing is obtained, the Debtor will make adequate protection payments in the amount of $77.71 per month. This amount is calculated by the amount owed, amortized over 60 months at the interest rate bid by the creditor, 9.5%. The creditor shall retain its lien until fully paid.

Class 2- The secured claim of the property tax certificate holder, Ariel Fund 2010 Tax, LLC, for 2009 tax year property taxes, in the amount of $3,146.92 is impaired. This amount is secured by the property located at 135 W. 12th St, Riviera Beach, FL and will be paid in full upon the obtaining of post-petition financing. In the event that post-petition financing is not obtained, the Church Property will be deeded back to the lender and the creditor will retain its lien on the property. Until such time as the refinancing is obtained, the Debtor will make adequate protection payments in the amount of $79.48 per month. This amount is calculated by the amount owed, amortized over 60 months at the interest rate bid by the creditor, 17.75%. The creditor shall retain its lien until fully paid.

Class 3 – The secured claim of the property tax certificate holder, Heather E. Jurist, TTEE, for 2010 tax year property taxes, in the amount of $3,444.25 is impaired. This amount is secured by the property located at 135 W. 12th St, Riviera Beach, FL and will be paid in full upon the obtaining of post-petition financing. In the event that post-petition financing is not obtained, the Church Property will be deeded back to the lender and the creditor will retain its lien on the property. Until such time as

the refinancing is obtained, the Debtor will make adequate protection payments in the amount of $87.46 per month. This amount is calculated by the amount owed, amortized over 60 months at the interest rate bid by the creditor, 18%. The creditor shall retain its lien until fully paid.

Class 4 - The secured claim of the property tax certificate holder, Florida Tax Lien Assets IV, for 2011 tax year property taxes, in the amount of $3,057.44 is impaired. This amount is secured by the property located at 135 W. 12th St, Riviera Beach, FL and will be paid in full upon the obtaining of post-petition financing. In the event that post-petition financing is not obtained, the Church Property will be deeded back to the lender and the creditor will retain its lien on the property. Until such time as the refinancing is obtained, the Debtor will make adequate protection payments in the amount of $7.64 per month. This amount is calculated by the amount owed, amortized over 60 months at the interest rate bid by the creditor, 17.75%. The creditor shall retain its lien until fully paid.

Class 5 - The secured claim of the Palm Beach County Tax Collector, for the years 2008, 2012 and 2013 property taxes in the combined amount of $6,968.87 is impaired. This amount is secured by the property located at 135 W. 12th St, Riviera Beach, FL and will be paid in full upon the obtaining of post-petition financing. In the event that post-petition financing is not obtained, the Church Property will be deeded back to the lender and the creditor will retain its lien on the property. Until such time as the refinancing is obtained, the Debtor will make adequate protection payments in the amount of $220.68 per month. This amount is calculated by the amount owed, amortized over 60 months at the interest rate of 18%. The creditor shall retain its lien until fully paid.

Class 6 - The secured claim of AM Retail Source is impaired and will be paid the amount OF $270,000.00 in full settlement of the amount owed upon the obtaining of post-petition financing. This amount is secured by the Church Properties. To provide further security to the creditor, the Debtor will execute a quit claim deed to AM Retail Source, LLC which shall be held in escrow by Brian K. McMahon, P.A. If the Debtor does not obtain post-petition financing prior to March 15, 2014, Brian K. McMahon, P.A. shall turnover the quit claim deed to AM Retail Source, LLC. Until such time as the

Debtor obtains post-petition financing, the Debtor shall pay the sum of $3,000.00 per month as adequate protection to the creditor. The first payment, due June 15, 2013, shall include the payment of $5,000.00 for costs and fees incurred by the creditor post-petitionThe creditor shall retain its lien until fully paid.

Class 7 – All unsecured claims, if any, allowed under § 502 of the Code are not impaired and diminimis. No claims have been filed to date. The amount of the claim shall be paid in full 30 days after the effective date of the Plan as defined in Article VII of the Plan, or the date on which such claims are allowed by a final non-appealable order.

Class 8 – The Debtor shall retain all property of the estate not surrendered.

The debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. Section 1930(a)(6) within ten (10) days of the entry of this order for pre-confirmation periods and simultaneously provide to the United States Trustee an appropriate affidavit indicating the cash disbursements for the relevant period. The reorganized debtor shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) based upon all disbursements of the reorganized debtor for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), until the earlier of the closing of this case by the issuance of a Final Decree by the Court, or upon the entry of an Order by this Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code, and the party responsible for paying the post-confirmation United States Trustee fees shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating all the cash disbursements for the relevant period.

The plan proposes to pay all costs and expenses of administration within thirty days of the date of confirmation of the Plan, or within such additional time as the administrative claimants may allow. The total amount of administrative expenses has not yet been determined, but will be set by the Court at the hearing on the confirmation of the Plan.

The plan will be funded by the income of the Debtor. The Plan of Reorganization is deemed by the Debtor to be feasible.

## X. CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requires that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor at least as much as the creditor would receive in a chapter 7 liquidation case, unless the creditor votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A. Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to accept or reject the Plan. A creditor has a right to vote for or against the Plan only if that creditor has a claim that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that classes are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent believes that classes are unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

#### 1. What is an Allowed Claim?

Only a creditor with an allowed claim has the right to vote on the Plan. Generally, a claim is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim, unless an objection has been filed to such proof of claim. When a claim is not allowed, the creditor holding the claim cannot vote unless the Court, after notice and hearing, either overrules the objection

or allows the claim for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

***The deadline for filing a proof of claim in this case was March 12, 2012.***

### 2. What is an Impaired Claim?

As noted above, the holder of an allowed claim has the right to vote only if it is in a class that is impaired under the Plan. As provided in § 1124 of the Code, a class in considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3. Who is Not Entitled to Vote?

The holders of the following types of claims and equity interests are not entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;

- holders of claims and equity interests that are not "allowed claims" or "allowed equity interests", unless they have been "allowed" for voting purposes.

- holders of claims or equity interests in unimpaired classes;

- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3) and (a)(8) of the Code;

- holders of claims or equity interests in classes that do not receive or retain any value under the Plan; and

- administrative expenses

***Even if you are not entitled to Vote on the Plan, you have a right to object to Confirmation of the Plan.***

### 4. Who Can Vote in More than One Class?

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise holds claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

B. Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class of creditors, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes as discussed below in Section B.2.

1. Votes Necessary for a Class to Accept the Plan

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (½) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

2. Treatment of Nonaccepting Classes

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manned prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes or of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cram down" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

## XI. EFFECT OF CONFIRMATION

In accordance with 11 U.S.C. § 1141(d)(5), the Debtor will not, without court order, be entitled to a discharge until all payments are made pursuant to the terms of the Plan.

The Debtor will seek to have the case administratively closed until all payments are made and the Debtor is entitled to a discharge.

## XII. CONCLUSION

The Plan offers 100% distribution to all creditors.

*[signature]*
Holmer Altidor, President

Brian K. McMahon. P.A.
6801 Lake Worth Rd, Suite 315
Lake Worth, FL 33467
Tel (561)642-3000
Fax (561)965-4966
brianmcmahonpa@gmail.com
By: s/ Brian K. McMahon
    Brian K. McMahon
    FL Bar No. 853704